IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| MITCHELL RUBENSTEIN & ASSOCIATES, P.C. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-2497 |
| | * | |
| SUNRISE CREDIT SERVICES, INC. and ARROWOOD INDEMNITY COMPANY, | * | |
| Defendants. | * | |

******

## MEMORANDUM OPINION

Pending in this declaratory judgment action is a motion to dismiss (ECF No. 18) filed by Defendants Sunrise Credit Services, Inc. and Arrowood Indemnity Company. The issues have been fully briefed and a hearing was held on Tuesday, December 20, 2016. For the following reasons, Defendants' motion to dismiss is granted.

**I.  BACKGROUND**

The present indemnity action arises from a separate lawsuit filed by debtor, Demetra Baylor, against the debt collector and plaintiff in this case, Mitchell Rubenstein & Associates, P.C. ("MRA"), in the United States District Court for the District of Columbia ("D.C. case"). The following facts are taken from MRA's amended complaint (ECF No. 17) and the published opinions of the D.C. district court in the underlying litigation.[1] *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 174 F. Supp. 3d 146 (D.D.C. 2016) (granting MRA's motion for summary

---

[1] A district court may take judicial notice of "matters of public record" without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). MRA refers to and relies upon the judicial opinions rendered in the underlying D.C. litigation in its amended complaint and throughout its brief in opposition to Defendants' motion to dismiss. Thus, the Court will, where appropriate, take judicial notice of the facts contained in the opinions rendered in the underlying D.C. litigation for background only. The facts necessary to decide the present motion, however, are taken from MRA's amended complaint.

judgment); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 77 F. Supp. 3d 113 (D.D.C. 2015) (adopting magistrate judge's report and recommendation regarding attorney's fees); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 55 F. Supp. 3d 43 (D.D.C. 2014) (granting motion to dismiss in part). All facts are construed in the light most favorable to MRA as the nonmoving party.

A.   The D.C. Case

Demetra Baylor is a 2004 graduate of the Pratt Art Institute in Brooklyn, New York. To finance her education, Ms. Baylor took out six separate student loans but failed to pay those loans back in full. *Baylor*, 174 F. Supp. 3d at 149–50. On or before December 17, 2013, Arrowood Indemnity Company ("AIC"), through its agent, Sunrise Credit Services ("SCS"), referred Ms. Baylor's loans to Mitchell Rubenstein & Associates, P.C. ("MRA") for collection. Amended Complaint, ECF No. 17 at 2. AIC and SCS were not involved in the underlying D.C. litigation but are the defendants in the present indemnity action. They will be referred to collectively as the "Defendants" throughout this Memorandum Opinion.

On February 21, 2013, Ms. Baylor received a letter from MRA notifying her that she owed an alleged debt of $26,471.07 to a creditor, Arrowood Indemnity Company, under the file number R80465. *Baylor*, 174 F. Supp. 3d at 150. Ms. Baylor disputed the amount of the debt and sent MRA a letter to that effect on March 21, 2013. *Id.* MRA responded in another letter dated March 26, 2013. *Id.* This letter itemized Ms. Baylor's debt obligation and advised her that, through July 28, 2011, she owed her creditor $31,268. By May 2013, Ms. Baylor had retained counsel regarding the debt described in the February 21 and March 25 letters. Her attorney requested information associated with the debt collection and requested that MRA not contact her client directly. *Id.*

2

Ms. Baylor's attorney then entered into settlement negotiations with MRA. On August 22, 2013, MRA sent another letter to Ms. Baylor concerning additional amounts due under a different file number, R83798, and listed the creditor as Tuitionguard Arrowood Indemnity. The letter was addressed to "Radi Dennis Consumer Justice ESQ, 1014 Florida Avenue, NE Apartment 1, Washington DC 20002," naming Ms. Baylor's attorney as the addressee but sending the correspondence to Ms. Baylor's address. This letter stated that Ms. Baylor owed a debt of $27,459.48. Ms. Baylor's attorney responded to the August 22 letter on September 12, 2013, reminding MRA that Ms. Baylor disputed the debt and that Ms. Baylor was represented by counsel and thus should not be contacted directly. *Id.* at 150–51. MRA responded to Ms. Baylor's attorney's September 12 letter on September 26, 2013. That letter stated that the amount due for the debt under file number R83798 was "$27,459.48 plus interest from 10/21/11 at the rate of 3.75% until paid." *Id.* at 151.

On December 17, 2013, Ms. Baylor filed a three count complaint in the United States District Court for the District of Columbia against MRA. The complaint alleged that MRA engaged in unfair and deceptive trade practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), the District of Columbia Debt Collection Law, and the District of Columbia Consumer Protection and Procedures Act. At base, Ms. Baylor alleged that MRA violated both state and federal law when it misstated the amount of debt Ms. Baylor owed, as well as the name of the creditor, and her account number. Baylor also complained of being contacted directly despite MRA knowing she was represented by counsel.

MRA conceded that its communications with Baylor created confusion concerning the amount of her debt because certain letters included interest and others did not. MRA further conceded that it sent the August 22 letter to Baylor directly after MRA knew that she had

retained counsel. MRA, therefore, extended an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure to Ms. Baylor on January 17, 2014, which Ms. Baylor ultimately accepted. The Offer of Judgment only addressed and settled Ms. Baylor's FDCPA claims because, unlike Ms. Baylor's D.C. law claims, the FDCPA does not require proof that the violation was willful. *See* Pl.'s Opp. to Def.'s Motion to Dismiss, ECF No. 19 at 8 n.4. The Offer of Judgment required MRA to pay Ms. Baylor $1,001.00 plus costs and reasonable attorney's fees as to all claims under the FDPCA. *See Baylor*, 174 F. Supp. at 151.

Ms. Baylor then filed a motion pursuant to 15 U.S.C. § 1692k(a)(3) seeking $442.95 in costs and $155,700.00 in attorney's fees for 346 hours of work on Ms. Baylor's successful FDCPA claim at the "prevailing market rate" of $450.00 per hour. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 77 F. Supp. 3d 113, 115 (D.D.C. 2015). The D.C. District Court referred the matter to a magistrate judge for preparation of a report and recommendation. MRA opposed Ms. Baylor's fee motion, arguing that Ms. Baylor's fees were "grossly and intolerably exaggerated," and requested that the Court deny Ms. Baylor's request in its entirety. *Baylor*, 77 F. Supp. at 115. Ms. Baylor subsequently requested additional fees for drafting and filing her reply to MRA's opposition, bringing her fee request to $195,332.01 for work expended on the complaint, the opposition to MRA's motion to dismiss, and the fee petition and reply. *Id.* at 115–16.

On October 24, 2014, the magistrate judge issued a report and recommendation recommending that Ms. Baylor's initial fee request of $195,332.00 be reduced by 85% to $41,989.80. Both parties challenged the magistrate judge's report and recommendation. On January 6, 2015, the D.C. District Court adopted the report and recommendation in its entirety. *See id.* at 124.

Over the course of the D.C. case, all of Ms. Baylor's state law claims were dismissed except two. *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 55 F. Supp. 3d 43 (D.D.C. 2014). Ms. Baylor was permitted to proceed on her claim under § 28-3814(f)(5) of the D.C. Debt Collection Law, which prohibits a debt collector from willfully making "any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding." D.C. Code § 28–3814(f)(5). Ms. Baylor was also allowed to proceed with her claim under § 28–3814(g)(5), which provides that a debt collector cannot engage in "any communication with a consumer wherever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known." D.C. Code § 28–3814(g)(5). MRA moved for summary judgment on these two claims. The D.C. District Court granted MRA's motion because there was no evidence that MRA's conduct was willful, which is a required element under the D.C. Debt Collection Law. *See generally Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 174 F. Supp. 3d 146, 160 (D.D.C. 2016).

On May 26, 2016, Ms. Baylor appealed both the decision to grant MRA's motion for summary judgment on the two state law claims and its decision to adopt the magistrate judge's report and recommendation regarding her FDCPA-related attorney's fees. That same day, MRA filed its own appeal also challenging the decision to award Ms. Baylor $41,989.80 in attorneys' fees. Both appeals remain pending in the District of Columbia Circuit Court of Appeals. *See* Case Nos. 16-7070 & 16-7071.

**B.    The Present Action for Indemnification**

On May 25, 2016, MRA filed a complaint for declaratory judgment in the Circuit Court for Montgomery County, Maryland against AIC and SCS for the damages and expenditures MRA incurred in the underlying D.C. litigation. ECF No. 2. Defendants removed the complaint

to this Court based on federal question jurisdiction or, in the alternative, diversity of citizenship pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

On July 29, 2016, MRA filed an amended complaint, alleging that it sent Ms. Baylor demand letters containing inaccurate debt information because, "[u]benownst to MRA, SCS did not accurately state the amount of the outstanding debt on the dates that it referred the Loans to MRA." ECF No. 17 at 2.[2] As a direct result of SCS's misrepresentation of the debt owed, Ms. Baylor filed the underlying suit against MRA. *Id.* It therefore requests that this Court enter a declaratory judgment that Defendants are required to indemnify MRA for all of its expenditures related to the defense of the underlying D.C. case.

Specifically MRA seeks to recover the following: (1) the $1,001 in damages plus $400 in court costs it paid to Ms. Baylor pursuant to the parties' Offer of Judgment regarding MRA's alleged violations of the FDCPA; (2) Ms. Baylor's FDCPA-related attorney's fees that, pursuant to the FDCPA, MRA is required to pay; and (3) MRA's own attorney's fees in defending against Ms. Baylor's FDCPA and state law claims.

On August 8, 2016, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of ripeness because the underlying litigation is on appeal. ECF No. 18. Alternatively, Defendants argue that MRA holds no legal right to indemnification under either the FDCPA or state law and thus the action must be dismissed.

## II. STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived

---

[2] The Court notes that despite this averment in the instant amended complaint, MRA did not avail itself of the bona fide error defense in mitigation of damages under the FDCPA in the D.C. case. *See* 15 U.S.C. 1692k(c).

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.   ANALYSIS

#### A.   Propriety Entertaining the Declaratory Judgment Action

A federal court has the discretion to entertain a declaratory judgment action when it finds that the declaratory relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Cas. Co. v. Fuscardo*, 35 F.3d 963, 966 (quoting *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375 (4th Cir. 1994) (quoting E. Borchard, *Declaratory Judgment* 107–09 (1934))). *See also White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir. 1990); *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321 (4th Cir. 1937).

Here, MRA seeks a declaration of the Defendants' obligations to MRA in connection with Ms. Baylor's lawsuit. Such declaratory relief would be useful in determining the parties' legal relationship by resolving whether, or to what extent, SCS and AIC must indemnify MRA for the costs and damages MRA incurred in defending against Ms. Baylor in the underlying lawsuit. Resolution of this issue will help clarify the extent of Defendants' stake in the underlying litigation. Accordingly, the Court finds that entertaining the present declaratory judgment action is prudential in this case.

**B.      Choice of Law**

MRA argues that Maryland law applies to this case because MRA is a Maryland law firm, the parties have contracted with each other in Maryland, and the Plaintiff has performed under the contract in Maryland. ECF No. 19 at 7–8. Defendants argue that D.C. law controls because "the alleged harm most likely occurred in the District of Columbia, where Ms. Baylor resides and where Mr. Rubenstein repeatedly sent demand letters in violation of the FDCPA." ECF No. 21 at 5. "Choice-of-law analysis becomes necessary only if the relevant laws of the different states lead to different outcomes." *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 750 (D. Md. 2003); *Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985) ("Conflicts rules are appealed to only when a difference in law will make a difference to the outcome."). Here, the outcome is the same under the laws of Maryland and the District of Columbia and thus the law of the forum—Maryland—governs.

**C.      Indemnity Under the FDCPA**

MRA alleges that SCS and AIC must indemnify it for both damages, court costs, and award of Baylor's attorneys fees arising from the FDCPA claims stemming from MRA's Offer of Judgment. It is well settled that a party seeking contribution or indemnification under a federal

statute like the FDPCA must demonstrate that such a right (1) is created by Congress, either explicitly or implicitly; or (2) lies in federal common law. *Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir. 1998) (citing *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981)).

The FDCPA's comprehensive remedial scheme confers no express or implicit right to indemnity. Accordingly, all courts to address the issue have held that the FDCPA provides "no room for a court to infer a right to contribution or indemnification." *Cintron v. Savit Enterprises*, No. 07-CV-04389-FLW, 2009 WL 971406, at *2 (D.N.J. Apr. 9, 2009); *see also Camacho v. Jefferson Capital Sys., LLC*, No. 14-CV-02728-BLF, 2014 WL 4954817 (N.D. Cal. Oct. 2, 2014); *Conner v. Howe*, 344 F. Supp. 2d 1164, 1171 (S.D. Ind. 2004); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007); *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1058 (N.D. Cal. 2000). Nor does a right to indemnity for FDCPA exist under federal common law. *See, e.g.*, *Cintron v. Savit Enterprises*, No. 07CV04389FLW, 2009 WL 971406, at *4 (D.N.J. Apr. 9, 2009); *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal. 2007). MRA as a matter of law, therefore, is not entitled to indemnity for any damages, fees or costs arising from the FDCPA claims.

MRA maintains, however, that the FDCPA is irrelevant because MRA is not seeking indemnification under the FDCPA but instead pursuing a common law right to indemnity under either Maryland or D.C. law. ECF No. 19 at 9. MRA's argument is unavailing. MRA cannot rely on state common law to advance a right to indemnification for damages and expenditures arising from FDCPA violations. *McMillan v. Equifax Credit Info. Servs., Inc.*, 153 F. Supp. 2d 129, 132 (D. Conn. 2001) ("Where a third party complaint seeks indemnification or contribution for

violation of a federal statute, federal law applies."). This is so because to hold otherwise would improperly augment Congress' comprehensive remedial scheme under the FDCPA.

In this regard, *Cintron v. Savit Enterprises*, No. 07-CV-04389-FLW, 2009 WL 971406 (D.N.J. Apr. 9, 2009) is instructive. There, as here, the defendant sued under the FDCPA filed a third-party complaint against two credit reporting agencies for common law indemnification under New Jersey law for its violations of the FDCPA and FCRA. The *Cintron* court held that indemnification under New Jersey common law is unavailable because indemnity for FDCPA and FCRA is exclusively a question of federal, not state, law. *Id.* at *2. Further, because neither the FDCPA nor the FCRA provides for any express or implied right of indemnification, and none lies in federal common law, the defendant's indemnification and contribution claims necessarily failed. *Id.* at *4.

Employing a similar analysis for claimed indemnity arising from violations of other federal statutes, courts in this district have refused to indemnify a defendant under a common law theory when the relevant federal statute does not provide for express or implied indemnity. In *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F. Supp. 2d 814 (D. Md. 2009), for example, the plaintiffs sued multiple defendants for violations of the Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA"). One defendant filed a cross-claim against another defendant seeking indemnification. The court dismissed the cross-claims with prejudice because neither the FHA nor the ADA provides a right to indemnification or contribution. Accordingly, allowing such a state law claim would "frustrate the achievement of Congress' purposes in the FHA and the ADA." *Id.* at 824 (citing *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989)).

Similarly here, MRA cannot assert Maryland's or D.C.'s common law rights to indemnification "in an effort to eschew Congress' decision to preclude a right of indemnification or contribution as remedies under the . . . FDCPA." *Cintron*, 2009 WL 971406, at *4. The FDCPA is a "comprehensive and reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007) (citation and internal quotation marks omitted). Accordingly, Defendants' motion to dismiss will be granted to the extent MRA's complaint seeks indemnification for the damages and attorneys' fees it paid to Ms. Baylor for MRA's alleged violations of the FDCPA.

In fairness to MRA, this Court independently considered whether indemnity is proper under the FDCPA where both Plaintiff and defendant are "debt collectors" under the FDCPA. *See, e.g.*, *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1088–89 (E.D. Cal. 2013). Indemnity in that context can only lie where the principal debt collector maintained "'control over the conduct or activities' of the attorneys it has hired for debt collection." *Kniley v. Citibank, N.A.*, No. C 14-05294 WHA, 2015 WL 1535668, at *4 (N.D. Cal. Apr. 6, 2015) (quoting *Clark v. Capital Credit & Collection Services*, 460 F.3d 1162, 1173 (9th Cir. 2006)); *accord Hollingsworth v. Perry*, 133 S. Ct. 2652, 2666 (2013) ("Agency requires more than mere authorization to assert a particular interest. 'An essential element of agency is the principal's right to control the agent's actions.'" (quoting 1 Restatement (Third) of Agency § 1.01, Comment *f* (2005)).

But even in that narrow exception to the blanket principle that no right to indemnity lies under the FDCPA, MRA has not pleaded sufficient facts to be entitled to indemnity. MRA does not allege in the amended complaint that either of the Defendants exercised control over MRA's

conduct. Nor does the amended complaint aver that either Defendant is a "debt collector" as defined under the FDCPA. Rather, MRA simply alleges that one or both of the Defendants supplied incorrect information regarding Baylor's debt. But MRAs actions in collecting the debt were independent and not controlled by Defendants. As a result, even the most charitable reading of MRA's amended complaint does not support indemnity for its attorney's fees under this narrow exception.

**D.    MRA's Ability to Recover It's Own Attorney's Fees**

MRA also seeks declaratory relief regarding SCS and AIC indemnifying MRA for MRA's attorney's fees incurred in defending against Ms. Baylor's federal and state law claims. *See* Amended Complaint, ECF No. 17 at 4–5. MRA alleges that it has paid attorneys in excess of $67,000.00 to defend the D.C. action and and expects to incur additional legal fees. *Id.* at 3.

MRA's theory of recovery lies exclusively in principle of common law agency. Relying on the Restatement (Third) of Agency § 8.14(b), which states, "A principal has a duty to indemnify an agent . . . when the agent suffers a loss that fairly should be borne by the principal in light of their relationship." Because MRA incurred its attorney's fees "as a direct result of the inaccurate information provided by SCS" and, "in light of the relationship of the parties," Amended Complaint, ECF No. 17 at 4–5, MRA asserts that Defendants should bear the cost of the litigation that arose out of their error. ECF No. 19 at 10.

MRA, however, sidesteps the "American Rule," a bedrock common law principle which directs that a "prevailing party is not awarded attorney's fees 'unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Nova Research, Inc. v. Penske*

*Truck Leasing Co.*, 405 Md. 435, 445 (2008) (quoting *Thomas v. Gladstone*, 386 Md. 693, 699 (2005). To hold otherwise would result in "the exception swallow[ing] the rule, and the presumption of the American rule disallowing attorneys fees would, in effect, be gutted." *Id.* at 452. Put differently, MRA has given this court precious little to upset the American Rule's presumption that "that parties bear their own legal costs, win or lose." *In re Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009).

Even if this Court were similarly to rely only on the Restatement of Agency, as MRA suggests, the Restatement does not support indemnification for attorney's fees here. Comment *b* to the Restatement states, "If the agent acted without actual authority in making the payment, the principal has a duty to indemnify the agent only if the principal benefited from the payment and the agent did not act officiously in making it." Restatement (Third) of Agency § 8.14(b) cmt. b (2006). Comment *d* further states that "[a] principal's duty to indemnify does not extend to losses that result from the agent's own negligence, illegal acts, or other wrongful conduct." Restatement (Third) of Agency § 8.14(b) cmt. d (2006).

Taken together, comments *b* and *d* foreclose recovery. It first bears noting that MRA does not allege in its amended complaint that it took action based on the actual authority of SCS or AIC. Rather, it is undisputed that MRA was defending against its own alleged wrongdoing in the underlying litigation, not that of SCS or AIC. In her complaint, Ms. Baylor alleged that MRA, not the Defendants, sent Ms. Baylor letters containing materially different information regarding Ms. Baylor's debt obligation. Her complaint also alleges that MRA, not the Defendants, contacted her directly after she retained counsel. While SCS and AIC may have forwarded the incorrect information to MRA, MRA seeks indemnity based largely if not exclusively on MRA's independent acts.

MRA also persists that it has an implied right to indemnity for its incurred attorney's fees in defending the D.C. law claims for which summary judgment was granted in MRA's favor. But a prerequisite to implied indemnification is that the moving party must have been found liable to the plaintiff in the underlying lawsuit. *Max's Of Camden Yards v. A.C. Beverage*, 172 Md. App. 139, 150–52 (2006) (noting that, to maintain an action for contribution or equitable indemnity, the tortfeasor seeking indemnity must be liable to the plaintiff); *accord C & E Services v. Ashland, Inc.*, 498 F. Supp. 2d 242, 267 (D.D.C. 2007) ("[A] prerequisite for a claim for equitable indemnification 'is that the party seeking it (indemnitee) have discharged the liability for the party against whom it is sought.'").

Here, the D.C. District Court found in favor of MRA and dismissed the claims. *See* Amended Complaint, ECF No. 17 at 3. MRA is thus not liable to Baylor. Accordingly, absent a duty to defend or express contractual provision,[3] neither of which is at play, MRA cannot recover its own attorney's fees for defending against these claims. MRA in this way is no different from any other successful defendant which must incur its own litigation expenses under the American Rule.

## IV. CONCLUSION

---

[3] In *Max's Of Camden Yards v. A.C. Beverage*, the Maryland Court of Special Appeals explained:

> There are circumstances in which implied indemnity has been held to be available without a showing of liability by the indemnitee, but ordinarily, that result requires facts different from those in this case. For example, circumstances, particularly the relationship of the parties, may give rise to a duty by one entity to defend another entity. Another example is when a statute establishes a duty to defend. It may be that, in Maryland, recovery of defense fees and costs is limited to those situations.

172 Md. App. 139, 150 (2006). The D.C. court takes the position "that a party may recover attorney's fees and expenses from another party under an implied indemnity obligation only when he is defending solely against an act of the other party and not against his own negligence." *Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.*, 451 A.2d 66, 70 (D.C. 1982) (emphasis in original). Neither position helps MRA because it does not allege the Defendants had a duty to defend MRA in the underlying lawsuit and MRA was clearly defending against its own wrongdoing.

For the foregoing reasons, MRA is not entitled to indemnification from Defendants for the expenses it incurred in defending against Ms. Baylor's state and federal law claims brought before the United States District Court for the District of Columbia. Accordingly, Defendants' motion to dismiss is granted. A separate order will follow.

| | |
|---|---|
| 1/5/2017 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |